(January 18, 1906.)

## BRADLEY v. JOHNSON.

[83 Pac. 927.]

LACHES—WHAT CONSTITUTES—STATUTE OF LIMITATIONS WHEN BAR TO ACTION.

1. Where it is shown that J. executed his promissory note due one year after date to B., and secured the note by mortgage on unpatented mining property; before the note was due J. notified B. that he was unable to pay the note, and soon thereafter left the state, the note and the mining deed having been placed in escrow on the day of their execution, with the condition that if J. paid the note, it with the deed should be returned to him, otherwise the deed was to be surrendered to B., J. not demanding the deed or offering to pay the note until twelve years after B. had done the annual assessment work on the property, and with his codefendant a large amount of development work, *held* that he is bound by his laches, and a cross-complaint in an action to remove a cloud attempted to be cast upon the title of B. by J. should be dismissed.

2. Where B. has been in adverse, open and notorious possession of unpatented mining property claiming the right of possession under a deed purporting to convey the title to the property for more than five years, an action to recover such possession from B. is barred by the provisions of section 4036 of the Revised Statutes of Idaho.

3. Under the provisions of section 4036 of the Revised Statutes of Idaho, which provides that "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor or grantor, was seised or possessed of the property in question within five years before the commencement of the action; and this section includes possessory rights to lands and mining claims," open, notorious, adverse possession of an unpatented mining claim for a period of more than five years brings it under the provisions of the above section.

(Syllabus by the court.)

APPEAL from the District Court of Blaine County.    Honorable Lyttleton Price, Judge.

Action to quiet title to mining property.    Judgment for the plaintiff; from the judgment and an order overruling a motion for new trial, defendant appeals.    Affirmed.

The facts are stated in the opinion.

N. M. Ruick and Sullivan & Sullivan, for Appellant, cite no authorities other than those discussed in the opinion of the court.

R. F. Buller, for Respondent, cites no authorities other than those discussed in the opinion.

STOCKSLAGER, C. J.—Respondents as plaintiffs commenced their action in the district court of Blaine county against appellant as defendant, to quiet the title to a certain unpatented mining claim in the Muldoon district known as the "Snowslide." Defendant answered denying title in plaintiffs, and in a cross-complaint alleged title in himself. Plaintiffs answered this cross-complaint putting in issue all the material allegations thereof.

Defendant demurred to the first paragraph of plaintiffs' answer to the cross-complaint, but the record does not disclose the ruling of the court, if any, on this demurrer. Contemporaneous with the filing of the demurrer, it is shown that counsel for appellant filed a motion termed "Motion to strike out." It is as follows: "Comes now the defendant by his counsel and moves the court to strike out of the plaintiffs' answer to defendants' cross-complaint on the matters and things set up in the first paragraph of said answer to defendants' cross-complaint, beginning with the words 'The plaintiffs,' in the first line thereof, and ending with the word 'thereon,' at the end of the first line of page 2 of said original answer to defendants' cross-complaint. Said motion is based upon the ground that the facts stated in said paragraph are not responsive to any issue tendered by the answer or cross-complaint of defendant. 2. That the facts stated in said answer to defendant's cross-complaint do not state a defense to the cause of action set up in defendant's cross-complaint. 3. That the allegations contained in the first paragraph of said answer to said cross-complaint are sham, irrelevant and frivolous." The language of the answer sought to be stricken out is as follows: "Plaintiffs for answer to the cross-complaint of the defendant deny that on the tenth day of September, 1891, the defendant made and delivered to plaintiff, R. F. Buller, a

deed to the property described in the complaint, and deny that the plaintiff, R. F. Buller, required and demanded such deed as additional security for the payment of the promissory note mentioned in the defendant's cross-complaint, and denies that the defendant Bradley had notice of the execution of the said deed as part of the security for the payment of said promissory note, and avers the fact to be that defendant deposited a deed in escrow with the First National Bank of Hailey to be delivered upon his failure to pay to said R. F. Buller the sum of $250, and interest thereon." This motion was over-ruled. Counsel for defendant excepted; a trial was had and the court made and filed findings of fact and conclusions of law. The first finding of fact relates to the execution and delivery of the note and mortgage on the tenth day of September, 1891, and the agreement entered into whereby a deed to the property in controversy was placed in escrow in the First National Bank of Hailey, conditioned that if defendant failed to pay the note at maturity, the deed was to be delivered to said Buller by said Bank in payment of said debt and the debt canceled. That defendant failed to pay said note, and said escrow deed was taken up by plaintiff Buller shortly after the expiration of the said year, and the said debt was thereby fully paid and discharged and the said mortgage extinguished. That in the fall of the year 1892 plaintiff took possession of the property claiming it as his own by virtue of said deed, and remained in undisturbed, open, notorious, adverse possession of the same until the year 1899, when he bargained and sold a one-third interest therein to his coplaintiff, Bradley, and he and the said Bradley have ever since been in exclusive, open and notorious adverse possession of said property, and were in such possession at the time of the commencement of this suit. The second finding is that on the sixteenth day of September, 1904, Buller conveyed to Bradley a one-third interest in said property, who was an innocent, *bona fide* purchaser without notice of any equity or supposed equity of defendant therein. The third finding is that said property was an unpatented mining claim upon which it was necessary to do $100 worth of work annually in order to protect the title;

and said Buller has had such assessment work done every year since and including the year 1892 until the year 1898, and he and his coplaintiff have done said work and much more every year from the year 1899, until the year 1904, and have been at great expense improving and developing said property, the value of which greatly exceeds the value of all the ores extracted by them therefrom. The fourth finding is that during all the time from the fall of the year 1892 until the summer of 1904, the defendant abandoned said property and made no claim thereto, nor did any work thereon until a short time before the commencement of this suit, some time in the summer of the year 1904, when he began to assert a claim of title to the said property adverse to the title of plaintiffs and to threaten legal and other proceedings against plaintiffs in disparagement of their title to their great damage and injury. Finding No. 5 is that the defendant is estopped by his laches in not setting up nor asserting any title to the said premises for twelve years and acquiescing for this long period of time in the plaintiffs' claims and operations therein and thereon from now asserting his alleged or any equities that he may have had thereon. Finding No. 6 is that the plaintiffs have been in the actual, open, notorious and continuous adverse possession of the said premises for more than five years next before the commencement of this suit and after default in payment of the debt secured by the mortgage mentioned in defendants' cross-complaint.

The conclusions of law are that the defendant's claims are barred by his laches and by the statute of limitation. That defendant's cross-complaint should be dismissed. That plaintiffs are entitled to a decree quieting their title to the said premises as against the defendant, and perpetually enjoining him from setting up or asserting any claim to the said property.

Judgment was entered in harmony with the findings and conclusions. The appeal is from the judgment and from an order overruling motion for a new trial.

1. Counsel for appellant insists that the execution of the note, mortgage and deed of September 10, 1901, constituted

one transaction; that the deed was given as additional security for the loan, which fact constituted it a mortgage; 2. That as a mortgage the deed could not convey the legal title, but it was necessary that the same should be foreclosed before title could pass; 3. That plaintiffs are estopped from pleading the statute of limitation by reason of failure to foreclose, and that to permit plaintiffs to plead such statutes would be contrary to equity and would permit plaintiff Buller to take advantage of his own wrong; 4. The evidence fails to show that the possession of the premises by plaintiffs, or either of them, was adverse to defendant; 5. The plaintiff Bradley was put on notice of the nature of the transaction and cannot successfully claim as an innocent purchaser; 6. The defendant is entitled to an accounting and to a reconveyance of the property upon the payment of such sum as shall be found by the court to be due from defendant to plaintiffs. It may be well to state here that there is no dispute as to the time, manner and circumstances accompanying the execution and delivery of the note, mortgage and deed. It is also conceded—at least not disputed—that after the execution and delivery of the instrument above indicated, in the month of July, 1892, defendant notified plaintiff Buller, that ''he was not going to pay the mortgage off.'' This was about a month before the note was due. It is shown that defendant left the Muldoon country about that time and did not return until the summer of 1904, when he asserted his right to redeem the property. It is also conceded that Mr. Buller from 1892 until 1899 did the assessment work each and every year and thereby saved the claim from forfeiture. Thereafter the assessment work, and much more, each year was done by Mr. Buller and his co-respondent, Mr. Bradley, in an effort to develop the mine. This continued until the time of the commencement of this suit. During all this time appellant was absent from that mining district, at least never informed Mr. Buller that he was ready and willing to pay the amount due on the note and reimburse him for all trouble and expense incurred in preserving the property from forfeiture. If appellant showed the least interest in the property from July, 1892, when he informed Mr.

Buller that he "did not intend to pay the mortgage off" until the year 1904, when he returned to the Muldoon country and asserted his claim to the property, the record fails to disclose it. In other words, the appellant gets $300 of Buller's money in 1891, permits Buller and his co-respondent to do the assessment work continuously until 1904, and in addition to the assessment work a large amount of development work on the property, then, twelve years after, he notifies Buller he does not intend to pay the mortgage and after the expense and labor of Buller and Bradley have resulted in developing the mine to such an extent that he thinks the ore extracted will be sufficient to liquidate the note with its interest and expense incurred in development, comes into a court of equity by way of cross-complaint, and asks that "plaintiffs and each of them be required to account to this defendant for the value of all the ores extracted from said property, and by them, or either of them, converted to their own use. That upon payment or tender by this defendant to the plaintiffs of such sum, if any, as shall be found by the court to be due and owing by this defendant to the plaintiffs or either of them, after crediting the proceeds and value of ore so extracted by them and converted to their own use, the plaintiffs may be decreed, ordered and required to execute to this defendant a good and sufficient deed to the said property, and in the event of their failure to do so, said deed may be executed by a commissioner to be appointed by the court." If equity will support such a decree, it will be a new, and, we think, novel way of prospecting. He first seeks the aid of capital from Buller, then the labor of his fellow-miner, Bradley, to develop the mine, and if, after twelve years' use of Buller's money in doing the assessment work for six or seven years at $100 per year, and five years of Bradley's labor, in an effort to develop the mine to a paying basis, he comes into court and modestly asks that they be required to account to him for all ores extracted, and by a proffer to pay any balance found to be due plaintiffs on such accounting, they be required to execute and deliver to him a good and sufficient deed to the property. This demand is based upon the following facts:

In 1890 the appellant was the undisputed owner of the property in controversy with no one questioning his right of pos-. session and ownership save the government, wherein the title rested. All he had to do was to comply with the requirements prescribed for obtaining mining lands by patent. In September, 1891, he made a contract with respondent Buller to borrow a certain sum of money, and as security for the loan he executed and delivered his promissory note due in one year thereafter, and secured the note with a mortgage on the property in controversy together with some other unpatented claims in the same vicinity. On the same day he executed and delivered a mining deed to Buller for the same property. This deed and note above referred to were placed in escrow in the First National Bank of Hailey with the following conditions:

"To the First National Bank, Hailey, Idaho:

"The enclosed note and mining deed are deposited with you in escrow; if Andrew M. Johnson shall, on or before September 10, 1892, pay or cause to be paid to or deposited with you for R. F. Buller three hundred ($300.00) dollars, then deliver the note and deed enclosed to Andrew M. Johnson; if not so paid or deposited on or before said date, the enclosed deed to be delivered to R. F. Buller and note to Johnson.

"Dated September 10th, 1891.
                    "ANDREW M. JOHNSON.
                    "R. F. BULLER."

Buller testified that sometime after the note became due appellant left the country, but not until after he had notified him that he was not able to pay the mortgage. He further testifies that in the year 1893 he sent the note to Chehalis, Washington, with instructions to collect if Johnson would pay; that he sent it to some lawyer or lawyers, and he don't think it was ever returned. That at the time of the trial he was unable to find it. "That in order to avoid expense of foreclosure it was agreed that Mr. Johnson was to make an absolute deed to the mine and deposit it in the bank in escrow to be delivered if at the expiration of a year he did not

pay off the mortgage." That he never knew definitely where to locate Mr. Johnson from the time he received the notice from him in July, 1892, that he was unable to pay the mortgage until the summer of 1904. It is further shown that Mr. Buller did not have the deed recorded until the twenty-fourth day of September, 1898. In explanation he says: "I just overlooked it; the deed was in a package of papers and I forgot the recording of it." With reference to the note he says: "I don't recall whether I requested the return of the note by the parties to whom I sent it in Washington. I came to the conclusion that the note was worthless and didn't pay any more attention to it." On cross-examination Mr. Buller says: "I forgot when it was that I sent it out there; might have been in 1893. I was willing up to that time to have the note paid and give him the property if he wanted it. But I had to do the assessment work to save the property anyway." If we accept every contention of the appellant as true, in what condition do we find him when he comes into a court of equity asking for relief as is shown in this case? It matters not whether he is voluntarily in court or whether he is brought in and required to disclose his title and right to recovery, the facts remain the same. Mr. Buller says he has dealt with the property and treated it as his ever since the fall of 1892; why not when he was informed by appellant that he was unable to pay the note? In case Mr. Buller had not assumed charge of the property and did the annual assessment work each year from 1891 up to the time of the institution of this suit, there would have been no necessity for it. The property would have long since been subject to relocation. Mr. Buller or anyone else possessing the necessary qualifications might have located it, and the result would have been Buller would have lost all he had loaned with interest, and Johnson would certainly have no claim that the government would recognize. If this is true, and we do not think it can be questioned, in order to grant the appellant the relief he asks, we must hold that Buller was required to protect the property from forfeiture for an indefinite time by doing the assessment work, and after a lapse of twelve

years, when possibly by his money and his co-respondent's labor they have developed the property to such an extent that the net earnings will cancel the note with interest, and such other expense as they have incurred, and if so, appellant is willing to take the property with such overplus as may be due him. He also says he is ready and willing to pay any deficiency that may be found after respondents have accounted to him for all ore sold after paying the expense of extracting and marketing it. This money he says he tenders into court. In case there was an accounting and it was found as stated by Mr. Buller that the ore sold has paid but a small part of the expenses of production, appellant could pay the balance into court or not. If not, where is the remedy? It occurs to me that if equity will uphold the contention of appellant, prospecting may become an easy and profitable business in this state. Possibly it might be difficult to find many men of means as ''easy'' to work and as charitable after he was worked as respondent Buller seems to have been in this case. Appellant insists that Buller should have foreclosed his deed as a mortgage in order to pass title. This under ordinary conditions might and doubtless would be true. Had appellant appeared and demanded a settlement of the note within a reasonable time, tendering respondent Buller all that was found to be due on the note, equity would decree that Buller neglected to avail himself of his remedy to procure title to the property and he would have to suffer the consequences of his negligence. If Buller did the assessment work after the note was due, without procuring title to the property in the manner prescribed by law, he would doubtless be without a remedy to recover it back from appellant. The question here arises, What is a reasonable time? Can it be said that appellant may absent himself from the state for a period of twelve years without an effort to liquidate a debt for which he had given his note secured by a mortgage on the property, and in addition thereto a deed conveying all the right, title and interest in the property to respondent Buller? Can he permit Buller to do the assessment work for a period of seven years, and Buller and

Bradley for a period of five years without ever complaining of their possession—without being guilty of laches? If it may run twelve years, how long may it not run? When does the statute of limitations begin to run? When may appellant be said to be guilty of laches? These are the questions in this case to be determined by this court. The learned trial judge said by his findings that appellant was guilty of laches and that the statute of limitations barred the defense shown by the cross-complaint of appellant. If correct, either is sufficient to justify an affirmance of the judgment.

Appellant's counsel urge that *Brown v. Bryan,* 6 Idaho, 1, 51 Pac. 995, is decisive of this case. An examination of this case will disclose that the question there before the court was the effect of "A trust deed executed to secure a given debt, payable at a specified time, upon real estate (mining property), is, under the statutes of Idaho a mortgage, and cannot be foreclosed by notice and sale, under a power of sale in such trust deed; and such trust deed can only be foreclosed by judicial sale, pursuant to decree rendered in an action brought therefor in the proper court." This quotation is from the syllabus on rehearing. The syllabus in the original hearing fairly states the questions of fact in that case as they were understood by this court at the time of the hearing upon which the original opinion was based. It says: "One member of a mining partnership uses the money of the partners to purchase an outstanding trust deed upon the mining property, given by his copartner, taking the transfer in the name of a third person, who had no interest in the transaction, causes the property to be sold and bid in by said third party as his agent, and afterward procures a transfer to be made of the property to himself and another partner. Held, that such transfer was void, and the property should be decreed to belong to the maker of the trust deed or his grantee." In order to determine whether the judgment in the case at bar should be affirmed or reversed, it is unnecessary to reaffirm that judgment. It is sufficient to say it stands as the construction of the law of this state relative to the class of

deeds that was before the court for determination in that case and under the facts disclosed and considered as disclosed by the syllabus.  There is a very distinctive difference in the facts pertaining to the deeds in the two cases, and were it necessary to a determination of this case, we would discuss them.  The trial court found that the cross-complaint of appellant should be dismissed for the reason that his claims are barred by his laches and by the statute of limitations; if either is true the judgment must be affirmed.

In Story's Equity Jurisprudence, volume 2, tenth edition, section 1537, in discussing the equitable rule as to the effect of persons lying by and allowing another to expend money on his property, the text says: "But where a partner in a joint stock company, after his shares were declared forfeited, lay by for seven years, while the affairs of the concern were greatly depressed, until they began to be more prosperous, and then filed his bill to be let into a share of the profits, it was held that he must be considered as having acquiesced in the action of the directors, in declaring ᷣhis shares forfeited, and that he was not entitled to the relief sought."  The author cites with approval *Prendergast v. Turton,* 1 Younge & C. 98, 110-112, wherein it is said: "The point which has struck me from the beginning (and upon which everything that could be said has been said by counsel), is the time at which the suit has been instituted, having regard to the peculiar nature of the property and the circumstances of the case.  This is a mineral property—a property, therefore, of a mercantile nature, exposed to hazard, fluctuations, and contingencies of various kinds, requiring a large outlay, and producing, perhaps, a considerable amount of profit in one year, and losing it the next.  It requires, and of all properties, perhaps, the most requires, the parties interested in it to be vigilant and active in asserting their rights.  This rule, frequently asserted by Lord Eldon, is consonant with reason and justice.  Lord Eldon always acted upon it, and has been followed by subsequent judges of great knowledge, experience and eminence."

In 16 Cyclopedia, page 150, under the head of laches and stale demands, the author says: "Negligence bars relief in equity"; and further: "Courts of equity, while sometimes bound by and at other times following the analogy of statutes of limitations, also act independently of such statutes, refusing relief to parties who have slept upon their rights or have been negligent in asserting them." He cites a large number of authorities supporting this text.

The Nineteenth Century Digest, volume 19, section 193, under the head of "Laches and Stale Demands," furnishes valuable information on the subject. A number of decisions from numerous states are here digested by the author. The one most applicable to the case under consideration is *Landrum v. Union Bank,* 63 Mo. 48; it is said: "What length of delay to sue will bar, on the ground of laches, the right of parties whose property has been irregularly or improperly sold under color of a trust deed from claiming equitable relief must depend on the circumstances of each case, eight years held enough in this case." It is hard to conceive of a case where the above rule would apply with more force than the case at bar. Not one effort is shown on the part of appellant to assert any right or claim to the property that he had notified one of the respondents he was unable to redeem from the mortgage until twelve years had expired, and then only after suit was instituted to remove the cloud from the title he was then threatening to cast upon it. A very learned and interesting discussion of this question will be found in *Twin Lick Oil Co. v. Marbury,* 91 U. S. 587, 23 L. ed. 328, by Mr. Justice Miller. The property involved in this action was oil lands in West Virginia. Discussing the question of laches applicable to property of that character, he says: "The fluctuating character and value of this class of property is remarkably illustrated in the history of the production of mineral oil and wells. Property worth thousands to-day is worth nothing to-morrow, and that which would to-day sell for a thousanl dollars as its fair value, may, by the natural changes of a week or the energy and courage of desperate enterprise, in the same time be made to yield that much every

day. The injustice, therefore, is obvious, of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profits. While a much longer time might be allowed to assert this right in regard to real estate whose value is fixed, on which no outlay is made for improvement, and but little change in value, the class of property here considered, subject to the most rapid, frequent, and violent fluctuations in value of anything known as property, requires prompt action in all who hold an option, whether they will share its risks, or stand clear of them. . . . . With full knowledge of these facts, the appellant took no action until this suit was brought, nearly four years after the sale; and not until all the hazard was over, and the defendant's skill, energy and money had made his purchase profitable, was any claim or assertion made by the corporation or by the stockholders. We think both on authority and principle—a principle necessary to protect those who invest their capital and their labor in enterprises useful but hazardous—that we should hold that plaintiff has delayed too long.'' Many authorities are cited in support of this contention. The case applies with much force to the case at bar. It is exceedingly questionable whether the mining or boring for oil in West Virginia is more hazardous, or requires more skill, energy and money than the development of mineral in Idaho. It is unnecessary to further discuss this question or cite additional authorities. We think the findings of the court, conclusions of law and judgment are amply supported by the record, and the judgment is affirmed. Costs to respondents.

Ailshie, J., and Sullivan, J., concur.